POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS LIN, Individually and on Behalf of All Others Similarly Situated,<br><br>                                Plaintiff,<br><br>                        v.<br><br>TMC THE METALS COMPANY INC., GERRARD BARON, and CRAIG SHESKY,<br><br>                                Defendants. | Case No.<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Thomas Lin ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United

States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding TMC the metals company Inc. ("TMC" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired TMC securities between May 12, 2023 and March 25, 2024, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      TMC is a deep-sea minerals exploration company focused on the collection, processing, and refining of polymetallic nodules.

3.      In February 2023, TMC and its wholly owned subsidiary, Nauru Ocean Resources Inc. ("NORI"), entered into a strategic partnership with Low Carbon Royalties Inc. ("LCR") (the "LCR Partnership"). In a press release discussing the terms of the LCR Partnership, TMC stated, in relevant part, that "[t]he Company agreed with LCR to a purchase and sale agreement whereby LCR

2

acquired a 2.0% gross overriding royalty on [TMC's] NORI project area in the Clarion Clipperton Zone of the Pacific Ocean" and, "[i]n consideration . . ., the Company received $5,000,000 cash and an initial 35.0% equity interest in LCR."

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) TMC maintained deficient internal controls over financial reporting; (ii) as a result, the Company inaccurately classified the sale of future revenue attributable to the LCR Partnership as deferred income rather than debt; (iii) the foregoing misclassification, when it became known, would require TMC to restate one or more of its previously issued financial statements; and (iv) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

5.      On March 25, 2024, TMC disclosed in a filing with the SEC that the Company's financial statements for the first three quarters of 2023 "should be restated and, accordingly, should no longer be relied upon", citing the "re-evaluat[ion of] whether the offsetting entry to the proceeds it received from LCR should be classified as debt or deferred income."  Further, TMC explained that, "[a]s the transaction with LCR was considered an equity investment rather than a sale transaction, the sale of future revenue will be reclassified as Royalty liability" per appropriate accounting standards.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

6.      On this news, TMC's stock price fell $0.205 per share, or 13.23%, to close at $1.345 per share on March 26, 2024.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Pursuant to TMC's most recently filed Quarterly Report with the SEC, as of August 13, 2024, there were 323,993,016 of the Company's common shares outstanding.  TMC's securities trade on the Nasdaq Global Select Market ("NASDAQ").  Accordingly, there are presumably hundreds, if not thousands, of investors in TMC securities located within the U.S., some of whom undoubtedly reside in this Judicial District.  In addition, Plaintiff resides in this Judicial District.

11.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## **PARTIES**

12.    Plaintiff, as set forth in the attached Certification, acquired TMC securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.    Defendant TMC is a Canadian corporation with principal executive offices located at 595 Howe Street, 10th Floor, Vancouver, British Columbia, Canada. TMC's common stock trade in an efficient market on the NASDAQ under the ticker symbol "TMC".

14.    Defendant Gerrard Baron ("Baron") has served as the Company's Chief Executive Officer at all relevant times.

15.    Defendant Craig Shesky ("Shesky") served as the Company's Chief Financial Officer at all relevant times.

16.    Defendants Baron and Shesky are collectively referred to herein as the "Individual Defendants".

17.    The Individual Defendants possessed the power and authority to control the contents of TMC's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of TMC's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or

to cause them to be corrected.  Because of their positions with TMC, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

18.    TMC and the Individual Defendants are collectively referred to herein as "Defendants".

## SUBSTANTIVE ALLEGATIONS

### Background

19.    TMC is a deep-sea minerals exploration company focused on the collection, processing, and refining of polymetallic nodules.

20.    In February 2023, TMC and its wholly owned subsidiary, NORI, entered into the LCR Partnership.  In a press release discussing the terms of the LCR Partnership, TMC stated, in relevant part, that "[t]he Company agreed with LCR to a purchase and sale agreement whereby LCR acquired a 2.0% gross overriding royalty on [TMC's] NORI project area in the Clarion Clipperton Zone of the Pacific Ocean" and, "[i]n consideration . . ., the Company received $5,000,000 cash and an initial 35.0% equity interest in LCR."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

### Materially False and Misleading Statements Issued During the Class Period

21.    The Class Period begins on May 12, 2023, the day after TMC filed, post-market, a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended March 31, 2023 (the "Q1 2023 10-Q").  In discussing the Company's strategic partnerships, the Q1 2023 10-Q stated, in relevant part:

> The Company has accounted for the investment in Low Carbon Royalties in accordance with ASC 323-10 and has thus applied the equity method of accounting to this investment. When considering the royalty liability instrument as well as the embedded repurchase features, management has elected to account for the royalty liability under the fair value option in accordance with ASC 825-10.

22.    Further, with respect to the Company's disclosure controls and procedures, the Q1 2023 10-Q stated, in relevant part:

> Disclosure controls and procedures are controls and other procedures that are designed to ensure that information required to be disclosed in our reports filed or submitted under the Exchange Act is recorded, processed, summarized and reported, within the time periods specified in the SEC's rules and forms. Disclosure controls and procedures include controls and procedures designed to ensure that information required to be disclosed in our reports filed under the Exchange Act is accumulated and communicated to management, including our Chief Executive Officer and Chief Financial Officer, to allow timely decisions regarding required disclosure. ***Based on the evaluation of our disclosure controls and procedures, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of March 31, 2023***.[1]

---

[1] All emphases included herein are added unless otherwise indicated.

23.     Appended to the Q1 2023 10-Q as an exhibit was a signed certification pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, attesting that "the information contained in the [Q1 2023 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

24.     On August 14, 2023, TMC filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended June 30, 2023 (the "Q2 2023 10-Q").  In discussing the Company's strategic partnerships, the Q2 2023 10-Q stated, in relevant part:

> The Company has accounted for the investment in Low Carbon Royalties in accordance with ASC 323-10 and has thus applied the equity method of accounting to this investment. When considering the royalty liability instrument as well as the embedded repurchase features, management has elected to account for the royalty liability under the fair value option in accordance with ASC 825-10.

25.     Further, with respect to the Company's disclosure controls and procedures, the Q2 2023 10-Q stated, in relevant part:

> Disclosure controls and procedures are controls and other procedures that are designed to ensure that information required to be disclosed in our reports filed or submitted under the Exchange Act is recorded, processed, summarized and reported, within the time periods specified in the SEC's rules and forms. Disclosure controls and procedures include controls and procedures designed to ensure that information required to be disclosed in our reports filed under the Exchange Act is accumulated and communicated to management, including our Chief Executive Officer and Chief Financial Officer, to allow timely decisions regarding required disclosure. ***Based on the evaluation of our disclosure controls and procedures, our Chief***

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

*Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of June 30, 2023*.

**Changes in Internal Control over Financial Reporting**

> There were no changes in our internal control over financial reporting that occurred during the three months ended June 30, 2023 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

26.     Appended to the Q2 2023 10-Q as an exhibit was a signed certification pursuant to SOX by the Individual Defendants, attesting that "the information contained in the [Q2 2023 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

27.     On November 9, 2023, TMC filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended September 30, 2023 (the "Q3 2023 10-Q").   In discussing the Company's strategic partnerships, the Q3 2023 10-Q stated, in relevant part:

> The Company has accounted for the investment in Low Carbon Royalties in accordance with ASC 323-10 and has thus applied the equity method of accounting to this investment. When considering the royalty liability instrument as well as the embedded repurchase features, management has elected to account for the royalty liability under the fair value option in accordance with ASC 825-10.

28.     Further, with respect to the Company's disclosure controls and procedures, the Q3 2023 10-Q stated, in relevant part:

> Disclosure controls and procedures are controls and other procedures that are designed to ensure that information required to be disclosed in our reports filed or submitted under the Exchange Act is recorded, processed, summarized and reported, within the time periods

9

specified in the SEC's rules and forms. Disclosure controls and procedures include controls and procedures designed to ensure that information required to be disclosed in our reports filed under the Exchange Act is accumulated and communicated to management, including our Chief Executive Officer and Chief Financial Officer, to allow timely decisions regarding required disclosure. ***Based on the evaluation of our disclosure controls and procedures, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of September 30, 2023***.

### Changes in Internal Control over Financial Reporting

There were no changes in our internal control over financial reporting that occurred during the three months ended September 30, 2023 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

29.    Appended to the Q3 2023 10-Q as an exhibit was a signed certification pursuant to SOX by the Individual Defendants, attesting that "the information contained in the [Q3 2023 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

30.    The statements referenced in ¶¶ 21-29 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) TMC maintained deficient internal controls over financial reporting; (ii) as a result, the Company inaccurately classified the sale of future revenue attributable to the LCR Partnership as deferred income rather than debt; (iii) the foregoing misclassification, when it became

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

known, would require TMC to restate one or more of its previously issued financial statements; and (iv) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

### **The Truth Emerges**

31.     On March 25, 2024, TMC disclosed in a filing on Form 8-K with the SEC that the Company's financial statements for the first three quarters of 2023 "should be restated and, accordingly, should no longer be relied upon." Specifically, TMC stated, in relevant part:

> (a)            On March 22, 2024, the Audit Committee (the "Audit Committee") of the Board of Directors (the "Board") of the Company and the Board, after discussions with Ernst & Young LLP, the Company's independent registered public accounting firm, and the Company's legal advisors, concluded that the Company's previously issued financial statements (i) for the three months ended March 31, 2023 contained in its Quarterly Report on Form 10-Q for the quarter ended March 31, 2023 as filed with the Securities and Exchange Commission (the "SEC") on May 11, 2023, (ii) the six months ended June 30, 2023 contained in its Quarterly Report on Form 10-Q for the quarter ended June 30, 2023 as filed with SEC on August 14, 2023 and (iii) the nine months ended September 30, 2023 contained in its Quarterly Report on Form 10-Q for the quarter ended September 30, 2023 as filed with SEC on November 9, 2023 (the "Previous Financial Statements") should be restated and, accordingly, should no longer be relied upon.

> ***

> As will be disclosed in the Company's Annual Report on Form 10-K for the year ended December 31, 2023 expected to be filed with the SEC on March 25, 2024 (the "2023 Annual Report") [. . .], Quarterly Financial Data (Unaudited) Restatement of Previously Issued Financial Statements, to the audited consolidated financial statements included in the 2023 Annual Report when available - and as will be

11

discussed on the Company's conference call for the fourth quarter and full year ended December 31, 2023 to be held on March 25, 2024, ***the right to royalty payments underlying the NORI asset (sale of future revenue) amounting to $14 million was considered as the transfer (sale) of a non-financial asset in the Previous Financial Statements. In preparing the Previous Financial Statements, the Company derecognized the capitalized exploration contract related to the NORI project amounting to $0.25 million and recorded the remaining value of the non-financial asset received amounting to $13.75 million as a gain on disposition. In connection with the preparation of the financial statements for the year ended December 31, 2023 and a re-evaluation of Accounting Standards Codification 470, Debt ("ASC 470"), by the Company, the Company concluded that the sale of future revenue falls within the scope of ASC 470 and, as a result, the Company re-evaluated whether the offsetting entry to the proceeds it received from LCR should be classified as debt or deferred income. As the transaction with LCR was considered an equity investment rather than a sale transaction, the sale of future revenue will be reclassified as Royalty liability, as per ASC 470, in the Company's 2023 financial statements for the year ended December 31, 2023 to be included in the 2023 Annual Report. Factors that also influenced this reclassification included the Company's continued significant involvement in generating future cash flows from operations and the fact that the earnings process implied in this transaction had not been completed. As a result, the Company will restate the Previous Financial Statements in the 2023 Annual Report***.

32.    On this news, TMC's stock price fell $0.205 per share, or 13.23%, to close at $1.345 per share on March 26, 2024.

33.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

34.    During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

35.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired TMC securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

36.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, TMC securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery,

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by TMC or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of TMC;

- whether the Individual Defendants caused TMC to issue false and misleading financial statements during the Class Period;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of TMC securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

41.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- TMC  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold TMC securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

42.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

43.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## **COUNT I**

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

44.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

45.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly

engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of TMC securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire TMC securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

47.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for TMC securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about TMC's finances and business prospects.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

48.     By virtue of their positions at TMC, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

49.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of TMC, the Individual Defendants had knowledge of the details of TMC's internal affairs.

50.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of TMC.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to TMC's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

the aforementioned false and misleading reports, releases and public statements, the market price of TMC securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning TMC's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired TMC securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

51.     During the Class Period, TMC securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of TMC securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of TMC securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of TMC securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

52.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

54.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.    During the Class Period, the Individual Defendants participated in the operation and management of TMC, and conducted and participated, directly and indirectly, in the conduct of TMC's business affairs.  Because of their senior positions, they knew the adverse non-public information about TMC's misstatement of income and expenses and false financial statements.

56.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to TMC's financial condition and results of operations, and to correct

20

promptly any public statements issued by TMC which had become materially false or misleading.

57.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which TMC disseminated in the marketplace during the Class Period concerning TMC's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause TMC to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of TMC within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of TMC securities.

58.    Each of the Individual Defendants, therefore, acted as a controlling person of TMC.  By reason of their senior management positions and/or being directors of TMC, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, TMC to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of TMC and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

59.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by TMC.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  November 8, 2024                Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS