UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-9684 PA (AJRx) | Date | January 20, 2026 |
|---|---|---|---|
| Title | Thomas Lin v. TMC The Metals Company Inc., et al. | | |

Present: The Honorable   PERCY ANDERSON, UNITED STATES DISTRICT JUDGE

| Kamilla Sali-Suleyman | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**   IN CHAMBERS - ORDER

Before the Court is a Motion to Dismiss ("Motion") filed by defendants TMC The Metals Company Inc. ("TMC"), Gerard Barron ("Barron"), and Craig Shesky ("Shesky") (collectively "Defendants"). (Docket No. 46.) Defendants challenge the sufficiency of the Second Amended Class Action Complaint ("SAC"). The Motion is fully briefed. (Docket Nos. 46 – 49.) Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for October 20, 2025 was vacated, and the matter taken off calendar.

## I.   BACKGROUND

### A.   Procedural Background

Thomas Lin commenced this action on November 8, 2024 on behalf of a putative class of all purchasers of TMC securities between May 12, 2023 and March 25, 2024. The Complaint asserts claims against TMC and TMC officers Barron and Shesky (jointly the "Individual Defendants"),[1] for violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. On February 4, 2025, the Court granted a Motion for Appointment of Lead Plaintiff filed by movant Thomas Robinson ("Robinson"). (Docket No. 27.) Plaintiffs Robinson and additional named plaintiff Jeffrey Royal ("Plaintiffs") filed an Amended Class Action Complaint on March 5, 2025 ("FAC"). (Docket No. 34.) Defendants moved to dismiss the FAC, and the Court granted that Motion, dismissing the FAC with leave to amend. (Docket No. 41.) Plaintiffs filed a Second Amended Complaint on July 2, 2025, and a Corrected Second Amended Complaint on July 7, 2025. (Docket Nos. 42, 43-1.)[2]

---

[1]   Barron is TMC's Chief Executive Officer ("CEO") and Executive Chairman, and Shesky is TMC's Chief Financial Officer ("CFO"). (SAC ¶¶ 18-19.)

[2]   All references to the "SAC" in this order are to the Corrected Second Amended Complaint filed on July 7, 2025 as Exhibit A to Plaintiffs' Notice of Errata. (Docket No. 43-1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-9684 PA (AJRx) | Date | January 20, 2026 |
|---|---|---|---|
| Title | Thomas Lin v. TMC The Metals Company Inc., et al. | | |

### B.      Second Amended Complaint

The SAC alleges that TMC is a deep sea minerals exploration company focused on the collection, processing and refining of rare metals from the Pacific Ocean deep sea floor.  (SAC ¶¶ 24-26.)  TMC was originally formed as result of a merger between DeepGreen, a Canadian mining company founded in 2011, and Sustainable Opportunities Acquisition Corp. ("SOAC"), a Special Purpose Acquisition Company ("SPAC").  (SAC ¶ 27.)  The SAC alleges that as a SPAC, TMC had limited capital and relied on extensive borrowing to fund its operations.  (SAC ¶ 29.)

### 1.      The LCR Transaction

According to the SAC, TMC and its wholly owned subsidiary, Nauru Ocean Resources Inc. ("NORI"), entered into a strategic partnership with Low Carbon Royalties Inc. ("LCR") in February 2023 ("LCR Agreement" or "LCR Transaction").  (SAC ¶ 38.)  TMC described the transaction in a press release as follows: "[t]he Company agreed with LCR to a purchase and sale agreement whereby LCR acquired a 2.0% gross overriding royalty on [TMC's] NORI project area in the Clarion Clipperton Zone of the Pacific Ocean" and TMC "received $5,000,000 in cash and an initial 35.0% equity interest in LCR."  (Id.)[3]  Plaintiffs allege that after entering into the LCR Agreement, TMC told its investors that it had recorded a royalty liability on its balance sheet, and that it had used a specific process (fair value option) to evaluate its value.  (Id. ¶¶ 39-40.)  TMC also informed its investors that as a result of this transaction, it recorded a $13.75 million gain on disposition of assets.  (Id.)

### 2.      History of Improper Accounting for Non-Routine Transactions

The SAC contains a new section regarding TMC's alleged failure to properly account for complex and non-routine transactions.  (SAC ¶¶ 30-37.)  Plaintiffs allege that TMC has a history of making misstatements in its financial statements, correcting those misstatements with restatements, and then promising to retain qualified accounting staff so as not to make those same mistakes again.  (Id. ¶ 30.)  The SAC alleges two examples:  (1) SOAC's improper classification of warrants as equity rather than debt in 2019; and (2) DeepGreen's understatement of exploration expenses and overstatement of stock option expenses in 2021.  (Id. ¶¶ 31, 33.)  The SAC further alleges that on each occasion, after disclosing the accounting issue, TMC represented to investors that the company needed to formulate better internal

---

[3]      The SAC alleges that a "gross overriding royalty" refers to a royalty on gross revenue without any deductions for any costs of revenue.  (Id. ¶ 38.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-9684 PA (AJRx) | Date | January 20, 2026 |
|---|---|---|---|
| Title | Thomas Lin v. TMC The Metals Company Inc., et al. | | |

controls and to use appropriate expertise when accounting for complex or non-routine transactions in the future.  (Id. ¶¶ 32, 34.)

Specifically, after disclosure of the SOAC warrant issue, TMC detailed the following remediation measures on August 16, 2021:  (1) expansion of the company's internal review process for complex securities and related accounting standards; (2) hiring of additional third party professionals with additional expertise in accounting applications to financial reporting; and (3) retention of a valuation expert.  Following the DeepGreen issue, TMC specified the following remediation measures on November 14, 2022:  (1) appointing a CFO; (2) hiring qualified individuals for the core accounting function; (3) development of policies, processes, procedures and controls; and (4) evaluation of all new contracts and arrangements through a detailed analysis against accounting standards and technical interpretations.  (Id. ¶¶ 32, 34; Smith Dec. Exs. 14, 16.)  Finally, the SAC alleges that on May 11, 2023, "TMC claimed . . . that it had remediated its internal control deficiencies related to . . . 'maintaining sufficient written policies and procedures and the need to use appropriate technical expertise when accounting for complex or non-routine transactions.'"  (Id. ¶ 37.)

### 3. The False and Misleading Public Statements[4]

#### a. Failure to Properly Account for LCR Transaction

The SAC realleges that on March 25, 2024, TMC first disclosed in a filing with the Securities and Exchange Commission ("SEC") that TMC's financial statements for the first three quarters of 2023 needed to be restated due to the decision to reclassify the LCR gain on disposition of assets as a liability or debt – or the sale of future revenue.[5]  (SAC ¶¶ 40, 63.)  TMC also stated that "management identified a material weakness in our internal control over the accounting for non-routine transactions that resulted from the inadequate and untimely

---

[4]     As discussed below, the SAC alleges two categories of false and misleading statements that were first made on May 11, 2023 when TMC filed its Quarterly Report on Form 10-Q for quarter 1 ("10-Q").  The same statements were repeated in TMC's quarter 2 and 3 10-Q's and TMC's Annual Report for 2023, Form 10K ("10K").  (SAC ¶¶ 63–77.)

[5]     These disclosures were made in TMC's Form 8-K and 2023 Annual Report.  (SAC ¶¶ 78–79.)  The SAC alleges that after these disclosures, TMC's stock price fell $0.205 per share, or 13.23%, and that as a result of Defendants' misleading statements and omissions and the decline in the market value of TMC securities, Plaintiffs and other class members have suffered significant losses and damages.  (Id. ¶¶ 81–82.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-9684 PA (AJRx) | Date | January 20, 2026 |
|---|---|---|---|
| Title | Thomas Lin v. TMC The Metals Company Inc., et al. | | |

involvement of stakeholders and technical advisors with an appropriate level of expertise to account for a non-routine unusual and complex transaction."  (Id. ¶ 42.)

The SAC also realleges that the statements Defendants made during the class period regarding TMC's accounting for the LCR Agreement were materially false and misleading because:  (1) Generally Accepted Accounting Principles ("GAAP") required TMC to treat the LCR Transaction as issuance of debt in exchange for cash and financing, and not as a disposition of asset; (2) GAAP required TMC to recognize the fair value of the liability created by the royalty obligation regardless of whether the LCR transaction was an equity investment or disposition of asset; (3) TMC did not account for the royalty as a liability at all; and (4) TMC did not realize a $13.75 million gain on the LCR transaction.  (Id. ¶ 64.)  The SAC further alleges that TMC's restatement constitutes an admission that the restated financial statements were materially false when published.  (Id. ¶¶ 59-62.)

The SAC also includes new allegations regarding the falsity of the statements concerning the accounting for the LCR Transaction based on Plaintiffs' consultation with an accounting expert, Arcady Zaydenverg..  (Id. ¶ 44.)  Mr. Zaydenverg was retained to analyze TMC's disclosures regarding its accounting for the LCR Agreement.  (Id.)  According to Mr. Zaydenverg, under GAAP and the Accounting Standards Codification ("ASC"), TMC was required to record the LCR Transaction as a debt liability on its balance sheet, and TMC's disclosures were misleading to a reasonable investor because by stating that "management had elected to account for the royalty liability under the fair value option"  TMC implied that it had recognized a liability for the royalty when in actuality, it had not.  (Id. ¶¶ 45–51.)  Mr. Zaydenverg also opines – in apparent disagreement with the Court's earlier finding – that TMC did not disclose enough information to determine the liabilities the Company assumed in the LCR Transaction.  (Id. ¶ 51.)

> b.    Statements Regarding Accounting "Remediation" and Effective Controls

The SAC includes additional allegations regarding to TMC's accounting issues.  As discussed above, TMC had previously stated that it recognized the need to rely on appropriate expertise when accounting for complex or non-routine transactions, and that it had remediated its material weakness in that regard as of the end of 2022.  (SAC ¶ 65.)  The SAC alleges that these statements were misleading because TMC had not "employed individuals for the core accounting function in actually reviewing the LCR transaction, did not evaluate the new contracts against accounting standards, and did not develop and apply written procedures to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-9684 PA (AJRx) | Date | January 20, 2026 |
|---|---|---|---|
| Title | Thomas Lin v. TMC The Metals Company Inc., et al. | | |

ensure TMC's financial statements were accurate." (Id. ¶ 67.)[6] The SAC also continues to allege that Defendants' statements regarding the effectiveness of TMC's accounting controls were false and misleading because these material weaknesses in TMC's internal controls resulted in the failure to properly account for the LCR agreement. (Id. ¶¶ 69, 73, 77.)

**4.      Scienter Allegations**

Finally, like the FAC, the SAC alleges that the Individual Defendants were motivated to commit the alleged fraud because TMC was forced to operate in a "capital-light" manner due to "higher than expected redemptions of SOAC shares during the de-SPAC transaction, and the default of private placement investors," and the corresponding need to make the company appear more profitable than it was. (SAC ¶¶ 83, 89.) Plaintiffs also allege that "the simplicity and obviousness of the accounting standards at issue" and the small size of TMC also support a strong inference of scienter. (Id. ¶¶ 84-85, 90-91.) Finally, the SAC alleges that scienter is further supported by the Individual Defendants' Sarbanes-Oxley Act of 2002 ("SOX") certifications, personal evaluation of TMC's internal controls over financial reporting as of December 31, 2022, and the SAC's new allegations regarding TMC's failure to retain outside experts to advise regarding the accounting for the LCR transaction. (Id. ¶¶ 86-88, 92-94.)

**II.      JUDICIAL NOTICE**

Defendants request that the Court take judicial notice of excerpts from TMC's and SOAC's SEC filings, transcripts of earning calls, and a chart reflecting TMC's stock price. (See Docket No. 47.) In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court may take judicial notice of matters referred to in the complaint, but not attached, where the document's authenticity is not contested and the complaint necessarily relies on them. Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001). A court may also judicially notice matters of public record. Id. at 789. Courts routinely find SEC filings, as well as press releases, earnings calls, and other information made available to the market to be matters of public record, regardless of whether it was referenced in the complaint. See Dreiling v. Am. Express Co., 458 F.3d 942, 946 n.2 (9th Cir. 2006); Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.18 (9th Cir. 1999); In re Hansen Nat. Corp. Sec. Litig., 527 F. Supp. 2d 1142, 1149 (C.D. Cal. 2007). Plaintiffs have not opposed Defendants' Request for Judicial Notice. Accordingly, the Court grants Defendants' Request for Judicial Notice.

---

[6]      Plaintiffs' allegation that TMC failed to remediate is based solely on Mr. Zaydenverg's opinion that because of the company's alleged failure to comply with applicable accounting standards in accounting for the LCR Transaction, TMC did not rely on outside expertise. (Id. ¶¶ 52–58.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-9684 PA (AJRx) | Date | January 20, 2026 |
|---|---|---|---|
| Title | Thomas Lin v. TMC The Metals Company Inc., et al. | | |

## III.   **LEGAL STANDARD**

Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)).

However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561, 127 S. Ct. at 1968 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556, 127 S. Ct. at 1965. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235-36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679, 664 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

In a private action for securities fraud under Section 10(b), a complaint must satisfy heightened pleading requirements. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 321 (2007). First, the complaint must state with particularity the circumstances constituting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-9684 PA (AJRx) | Date | January 20, 2026 |
|---|---|---|---|
| Title | Thomas Lin v. TMC The Metals Company Inc., et al. | | |

fraud or mistake.  Fed. R. Civ. P. 9(b).  In addition, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, requires "the complaint [to] specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  "To adequately plead scienter, the complaint must . . . 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'"  15 U.S.C. § 78u-4(b)(2).  "The pleadings must state precisely the time, place, and nature of the misleading statement, misrepresentations, and specific acts of fraud."  Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994).  "Congress enacted the PSLRA to deter opportunistic private plaintiffs from filing abusive securities fraud claims, in part, by raising the pleading standards for private securities fraud plaintiffs."  In re Silicon Graphics Sec. Litig., 183 F.3d 970, 973 (9th Cir. 1999) (citing H.R. REP. CONF. NO. 104-369, at 32–41 (1995); 15 U.S.C. § 78u-4(b)(1)–(2) (1997)).  A court must dismiss a private securities fraud action seeking money damages if the complaint fails to meet the pleading requirements.  See 15 U.S.C. § 78u-4(b)(3)(A).

## IV.  ANALYSIS

### A.  Section 10(b) and Rule 10b-5

Section 10(b) of the Securities Exchange Act makes it unlawful "for any person . . . to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe[.]"  Rule 10b-5 defines three categories of manipulative or deceptive devices that constitute a violation of Section 10(b):

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-9684 PA (AJRx) | Date | January 20, 2026 |
|---|---|---|---|
| Title | Thomas Lin v. TMC The Metals Company Inc., et al. | | |

In a typical Section 10(b) private action based on material misrepresentations or omissions, a plaintiff must prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 157 (2008).

In dismissing the FAC, the Court concluded that the FAC failed to allege the first and second elements – falsity and scienter – with the requisite particularity. Specifically, the Court held that because TMC disclosed both the terms of the LCR Agreement and exactly how it accounted for it, and failed to support its conclusory allegations regarding TMC's accounting controls statements with particularized facts, the FAC did not plausibly allege falsity. (Docket No. 41 at pp. 7-12.) The Court also held that Plaintiffs failed to plausibly allege that Defendants knew or believed the statements were false when made or that they acted with the requisite level of fraudulent intent. (Docket No. 41 at pp. 12-16.) Defendants move to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs again fail to allege an actionable false or misleading statement or a strong inference of scienter. (See Docket No. 35.) In assessing the sufficiency of the SAC, the Court focuses on whether Plaintiffs' additional allegations rectify the issues identified by the Court in its prior ruling dismissing the FAC.

### 1. Falsity

For a statement to be actionable, the allegations must support both falsity and materiality of the statement at the time the statement was made. See Basic Inc. v. Levinson, 485 U.S. 224, 238, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988); Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 991 (9th Cir. 2009), as amended (Feb. 10, 2009). A plaintiff must specify each statement alleged to be misleading and why the statement was false or misleading. See 15 U.S.C. § 78u-4(b)(1); In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548–49 (9th Cir. 1994) (en banc), superseded by statute on other grounds ("[T]he plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."). "[I]t is clearly insufficient for plaintiffs to say that a later, sobering revelation makes an earlier, cheerier statement a falsehood." In re Read-Rite Corp. Sec. Litig., 335 F.3d 843, 846 (9th Cir. 2003) (internal quotation marks and citations omitted). "A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet this standard." Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1070 (9th Cir. 2008).

The Ninth Circuit applies the "objective standard of a 'reasonable investor' to determine whether a statement is misleading." In re Alphabet Inc. Sec. Litig., 1 F.4th 687, 699 (9th Cir. 2021). "[A] statement is misleading if it would give a reasonable investor the 'impression of a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-9684 PA (AJRx) | | Date | January 20, 2026 |
|---|---|---|---|---|
| Title | Thomas Lin v. TMC The Metals Company Inc., et al. | | | |

state of affairs that differs in a material way from the one that actually exists.'" Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 985 (9th Cir. 2008) (quoting Brody v. Transitional Hosps. Corp., 280 F.3d 997, 1006 (9th Cir. 2002)).  Furthermore, "it bears emphasis that § 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information. Disclosure is required . . . only when necessary to make statements made, in the light of the circumstances under which they were made, not misleading." Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 44 (2011) (internal quotation marks and ellipses omitted); 17 C.F.R. § 240.10b-5 (An omission is actionable only where disclosure of a "material fact [is] necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.").  "A misleading omission is material if 'there is 'a substantial likelihood that [it] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available' for the purpose of decisionmaking by stockholders concerning their investments.'"" In re Alphabet Inc. Sec. Litig., 1 F.4th at 699-700 (quoting Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co., 845 F.3d 1268, 1274 (9th Cir. 2017)).

> a.       Statements regarding accounting treatment for the LCR Transaction

The Court has reviewed the additional allegations pertaining to falsity included in the SAC.  While the Court previously ruled that TMC's statements regarding its accounting were not false because TMC had disclosed exactly how it treated the LCR Transaction, Plaintiffs now argue falsity based an alleged expert opinion that the accounting for the LCR Agreement was improper, misled investors, and occurred without consultation with appropriate accounting professionals.  Defendants argue that these additional allegations do not save Plaintiffs' SAC. The Court agrees.

First, the new allegations do not fix the fatal flaw in the FAC – that the statements made by TMC were not false because the company fully disclosed both the terms of the LCR Agreement and the methodology it used to account for it.  The alleged false statement in TMC's Form 10Qs is:  "When considering the royalty liability instrument as well as the embedded repurchase features, management has elected to account for the royalty liability under the fair value option in accordance with ASC 825-10."  (SAC ¶ 39.)  The newly alleged expert opinion that a reasonable investor would have not understood that TMC failed to account for the "give" or liability side of the transaction based on the reference to ASC 825-10, and that TMC did not disclose enough information for an investor to determine the liabilities the Company assumed in the LCR transaction, does not change the Court's analysis.

First and foremost, Plaintiffs fail to offer any well-pleaded or particularized facts to support their claim because Mr. Zaydenverg's opinion is an inadmissible legal conclusion.  See

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-9684 PA (AJRx) | Date | January 20, 2026 |
|---|---|---|---|
| Title | Thomas Lin v. TMC The Metals Company Inc., et al. | | |

Yuan v. Facebook, Inc., No. 18-CV-1725 EJD, 2021 WL 4503105, at *1-3 (N.D. Cal. Sept. 30, 2021) (declining to consider expert's "opinions as set forth in ... the [complaint]"; noting such opinions consisted of inadmissible conclusions regarding whether alleged misstatements would mislead reasonable investors and whether alleged losses were proximately caused by such misrepresentations, rather than "new facts or evidence"); City of Royal Oak Ret. Sys., v. Juniper Networks, Inc., 11-CV-04003 LHK, 2013 WL 2156358, at *6-7 (N.D. Cal. May 17, 2013) (declining to consider expert opinion that readers of financial statements would not understand effect of defendants' adoption of new revenue recognition rules); Kohler v. Litehouse, Inc., CV 12-04055 SI, 2012 WL 6217635, at *3 (N.D. Cal. Dec. 13, 2012) (striking from complaint quotations from expert report that "relay[ed] [expert's] opinion, but ma[de] no statements of fact"); In re Ashworth, Inc. Securities Litigation, 99 CV 0121-L (JAH), 2001 WL 37119391, at *3 (S.D. Cal. Dec. 3, 2001) (striking allegations based on expert's "legal conclusions").

Second, Plaintiffs essentially repackage the same arguments that were previously rejected by the Court by alleging them as an expert opinion in the SAC.  However, because Court declines to consider Mr. Zaydenverg's improper legal conclusion, Plaintiffs' SAC offers nothing more than the FAC, and thus still fails to allege falsity.  For the same reasons, Mr. Zaydenverg's speculative opinion that Defendants "must have" failed to consult with accountants or outside professionals, without any supporting facts, does not salvage their claim.  See Yuan v. Facebook, Inc., 2025 WL 4503015, * 3 (granting motion to dismiss and noting that expert opinions "cannot substitute for facts under the PSLRA").

Accordingly, the Court's conclusion remains unchanged – Plaintiffs fail to plausibly allege that any of the statements TMC made regarding its accounting for the LCR Transaction were false.

### b.        Statements Regarding Accounting Controls

Plaintiffs also reallege that TMC's statements about the effectiveness of its accounting controls and procedures for financial reporting ("[b]ased on the evaluation of our disclosure controls and procedures, our [CEO] and [CFO] concluded that our disclosure controls and procedures were effective") were false and misleading because in reality, a material weakness did exist, resulting in the failure to properly account for the LCR Agreement.  (SAC ¶¶ 68, 69, 72, 73, 76, 77.)  Plaintiffs' new allegation is that TMC's statement that it had remediated its prior material weaknesses was false because it did not fix its problems, as evidenced by its accounting for the LCR Transaction.  (Id. ¶¶ 42-43; 67, 69, 73, 77.)

The Court previously concluded that the statements relating to effectiveness of accounting controls were inactionable because they were qualified as management opinions and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-9684 PA (AJRx) | Date | January 20, 2026 |
|---|---|---|---|
| Title | Thomas Lin v. TMC The Metals Company Inc., et al. | | |

because Plaintiffs failed to either allege any particularized facts demonstrating that the Individual Defendants knew or should have known that their certifications were false. (Docket No. 41 at pp. 12–13.)  Specifically, the Court found that Plaintiffs failed to allege any facts explaining the nature of the control related deficiencies or how they affected TMC's accounting, or facts demonstrating that the Individual Defendants did not believe these opinions or knew of facts making these opinions false when made.  (Id.)

Plaintiffs' reliance on the new allegation that TMC failed to consult appropriate accounting professionals to address non-routine transactions, such as the LCR Transaction fails to fix this problem because this allegation is based solely on the expert opinion that the Court has already declined to consider, and not on any well-pleaded or particularized facts.[7]  There are simply no facts alleged that the Individual Defendants did not consult with accounting professionals with appropriate expertise or that they did not genuinely believe that the TMC accounting team was capable of performing its function, or that they knew that their accounting systems were deficient when they disclosed the methodology for accounting for the LCR Transaction.  As stated in the Court's Order dismissing the FAC, Plaintiffs' conclusory assertions without factual support simply do not suffice.  In re Gentiva Sec. Litig., 932 F. Supp. 352, 370 (E.D.N.Y. 2013) (rejecting claims based on conclusory allegations regarding the lack of disclosure controls and internal procedures.)

### 2.    Scienter

Defendants also argue that the SAC fails to adequately plead scienter.  To survive a motion to dismiss, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2); In re Cutera Sec. Litig., 610 F.3d 1103, 1112 (9th Cir. 2010).  Specifically, scienter requires an intent to deceive, manipulate, or defraud.  Tellabs, 551 U.S. at 319.  The standard is not whether a reasonable person can draw an inference that the defendant acted with scienter.  Id. at 317, 127 S. Ct. 2499, 168 L. Ed. 2d 179.  "To adequately demonstrate that the 'defendant acted with the required state of mind,' a complaint must 'allege that the defendant[] made false or misleading statements either intentionally or with deliberate recklessness."  Zucco, 552 F.3d at 991 (internal citation omitted).  "[F]acts showing mere recklessness or a motive to commit fraud and opportunity to do so . . . are not sufficient to establish a strong inference of deliberate recklessness."  Silicon Graphics, 183 F.3d at 974.  "[T]he plaintiff must plead a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an

---

[7]    The Court also notes that Plaintiffs continue to inconsistently allege both that accounting for the LCR Transaction was complex and non-routine, and that it was basic and obvious.  (SAC ¶¶ 52, 84, 90.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-9684 PA (AJRx) | Date | January 20, 2026 |
|---|---|---|---|

| Title | Thomas Lin v. TMC The Metals Company Inc., et al. |
|---|---|

extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." Zucco, 552 F.3d at 991 (internal quotation marks and citation omitted).

To qualify as "strong," "an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, 551 U.S. at 313. "A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." Zucco, 552 F.3d at 991. Courts may initially assess allegations individually, and then consider whether the allegations collectively meet the standard for pleading scienter. See Police Ret. Sys. v. Intuitive Surgical, Inc., 759 F.3d 1051, 1058 (9th Cir. 2014); see, e.g., id. at 1062-64. "Where, as here, the Plaintiffs seek to hold individuals and a company liable on a securities fraud theory, we require that the Plaintiffs allege scienter with respect to each of the individual defendants." Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc., 774 F.3d 598, 607 (9th Cir. 2014).

Under the Ninth Circuit approach, the Court first determines whether any of the Plaintiffs' allegations, standing alone, are "sufficient to create a strong inference of scienter" and then "[i]f none is sufficient alone," the Court will "then consider the allegations holistically to determine whether they create a strong inference of scienter taken together." In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1056 (9th Cir. 2014). In its prior Order the Court concluded that Plaintiffs' allegations failed on both levels. (Docket No. 41 at pp. 14–16.) The question now before the Court is whether the SAC contains any new allegations that help Plaintiffs meet their burden of pleading scienter.

Defendants argue that Plaintiffs still fail to plead the requisite level of fraudulent intent. (Motion at pp. 20–24.) The Court has already rejected the majority of Plaintiffs' scienter allegations on a stand alone basis. (Docket No. 41 at pp. 13–16.) The only new allegations concern the Individual Defendants' knowledge of past accounting system deficiencies that led to TMC disclosing its errors and the steps it took to avoid future mistakes. Plaintiffs argue that the Individual Defendants' alleged failure to fully remediate TMC's accounting deficiencies after representing that the systems had been fixed helps Plaintiffs meet their burden of pleading fraud. (Opp'n. at pp. 17–18.) In essence, Plaintiff's theory is that the Individual Defendants acted with fraudulent intent because they knew they had accounting issues, said that they had addressed those issues, but then made another accounting mistake, so obviously their "fix" wasn't good enough. This theory does not, by itself, suffice to establish the requisite level of intent. Rather Plaintiffs allege mere negligence, or at most, reckless failure on the part of the Individual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-9684 PA (AJRx) | Date | January 20, 2026 |
|---|---|---|---|

| Title | Thomas Lin v. TMC The Metals Company Inc., et al. |
|---|---|

Defendants to fix accounting systems and controls.  But mere recklessness does not amount to deliberate recklessness, as needed to establish scienter.  Instead, deliberate recklessness involves "an extreme departure from the standards of ordinary care. . . ."  <u>Zucco</u>, 552 F.3d at 991 (citation omitted).

Plaintiff's theory of fraud is also deficient because Plaintiffs fail to allege any motive involving personal profit or deceptive conduct or any particularized allegations to suggest deliberate recklessness.  <u>Prodanova v. H.C. Wainwright & Co.</u>, 938 F.3d 1097, 1107 (9th Cir. 2021) ("Generally, we expect that a financial motive for securities fraud will be clear; for example, someone inside the company stands to gain a substantial profit by engaging in deceptive behavior, such as selling shares before the company discloses negative information.")  There are no allegations that the Individual Defendants profited as a result of the accounting error.  There are no particularized allegations that the Individual Defendants encouraged deceptive behavior in TMC's accounting, or had access to contradictory information as to how to account for the LCR Transaction prior to its disclosure.  On the contrary, this case involves a fledgling company that openly disclosed its expectation to operate in the negative – without any revenues or profits – for many years.  This is a case where the corporate insiders also openly disclosed both the terms of the transaction at issue, exactly how the company accounted for it, and then admitted their error after an audit.  Thus, because Plaintiffs offer no allegations suggesting any motive, profit, or deceptive conduct on the part of the Individual Defendants, the SAC fails to allege the extreme departure from the standards of ordinary care needed to plausibly allege a securities fraud claim.  <u>See</u> <u>Prodanova</u>, 938 F.3d at 1107 ("Simply put, a company's apparent error – even an embarrassing or inexplicable one – does not establish fraudulent intent, especially if the plaintiff cannot offer a plausible motive for the company's conduct.")

Moreover, even if the SAC had alleged adequate facts to support an inference of fraud, Plaintiffs continue to fall short of meeting their burden of pleading facts showing that such inference is strong – at least as compelling as the opposing, plausible inference that Defendants made an "honest mistake."  <u>Zucco</u>, 552 F.3d at 991.  Here, TMC disclosed the manner in which it accounted for the LCR Transaction, along with the LCR Agreement's terms.  There is no alleged motive or an alleged scheme to defraud the market.  TMC did not expect any revenue for years, and its error did not result in any impact on its cash flow or on its expected, substantial net losses for the year.  In these circumstances, the allegations more plausibly support an inference of mistake, rather than intent to deceive or defraud.  <u>See</u> <u>In re Taleo Corp. Sec. Litig.</u>, No. C 09-00151 JSW, 2010 WL 597987, at *10 (N.D. Cal. Feb. 17, 2010) ("Indeed, the fact that Defendants applied [the accounting standard] in such a consistent and transparent manner raises a plausible inference that Defendants' error was innocent."); <u>Thomas v. Magnachip Semiconductor Corp.</u>, 167 F. Supp. 3d 1029, 1042 (N.D. Cal. 2016) (inference of scienter supported where company inflated total revenue by over $120 million and total net income by almost 500%).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-9684 PA (AJRx) | Date | January 20, 2026 |
|---|---|---|---|
| Title | Thomas Lin v. TMC The Metals Company Inc., et al. | | |

Overall, the Court again concludes that Plaintiffs' narrative of the alleged fraud is simply not as plausible as a non-fraudulent alternative. Plaintiffs' new allegations, even when viewed together with all the other allegations are not "cogent and compelling." Tellabs, 551 U.S. at 324. A "malicious inference" is not as strong as an "opposing innocent inference." Zucco, 552 F.3d. at 991. Based on all the facts alleged in this case, the Court concludes that it is more plausible that the Individual Defendants tried to remediate a problem and simply fell short than that they attempted to defraud the market. Because the inference of scienter here is not as strong as the inference that Defendants had a non-fraudulent intent, Plaintiffs have failed to satisfy the heightened pleading standard under the PSLRA. Accordingly, even if any of the challenged statements were actionable, Plaintiffs' securities fraud claim fails because of the failure to allege scienter.

**B.      Section 20(a)**

To state a claim under Section 20(a) of the Securities Exchange Act, a plaintiff must allege (1) a primary violation of federal securities law and (2) that the defendant exercised actual power or control over the primary violator. Howard v. Everex Sys., Inc., 228 F.3d 1057, 1065 (9th Cir. 2000). Because Plaintiffs have failed to state a claim for a primary violation of the securities law, the SAC's Section 20(a) claim also fails.

**Conclusion**

For all the foregoing reasons, the Court grants Defendants' Motion to Dismiss the SAC. Plaintiffs have requested leave to amend, but Defendants argue that further amendment would be futile. Rule 15 requires that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." Eminence Cap., LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003). However, "[a] district court acts within its discretion to deny leave to amend when amendment would be futile." Doe v. Garland, 17 F.4th 941, 950 (9th Cir. 2021) (quoting Chappel v. Lab. Corp. of Am., 232 F.3d 719, 725-26 (9th Cir. 2000)). The Court agrees with Defendants that amendment is futile here because Plaintiffs have had multiple opportunities to allege their securities fraud claims, and their Opposition fails to identify any specific factual allegations they would add to a Third Amended Complaint. Accordingly, the Court dismisses the SAC without leave to amend. The Court will issue a Judgment consistent with this Order.

IT IS SO ORDERED.